# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT GREENEVILLE

| | | | |
|---|---|---|---|
| QUINCY PATRICK JONES, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | 2:20-CV-199-DCLC-CRW |
| | ) | | |
| OFFICER DOMBERSKI, OFFICER GILLIAM, and OFFICER NEELY, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MEMORANDUM OPINION

The Court is in receipt of a pro se prisoner's complaint under 42 U.S.C. § 1983 [Doc. 1] and a motion for leave to proceed *in forma pauperis* [Doc. 4]. For the reasons set forth below, the motion for leave to proceed *in forma pauperis* [*Id.*] will be **GRANTED** and this action will be **DISMISSED** because the complaint fails to state a claim upon which relief may be granted under § 1983.

### I. FILING FEE

First, it appears from Plaintiff's motion for leave to proceed *in forma pauperis* [*Id.*] that he is unable to pay the filing fee. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [*Id.*] will be **GRANTED**.

Because Plaintiff is an inmate in the Sullivan County Detention Facility, he will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 220 West Depot Street, Suite 200, Greeneville, Tennessee 37743, as an initial partial payment, the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period

preceding the filing of the complaint. 28 U.S.C. § 1915(b) (1) (A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) has been paid to the Clerk. 28 U.S.C. §§ 1915(b)(2) and 1914(a).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to provide a copy of this memorandum and order to the Court's financial deputy and the custodian of inmate accounts at the institution where Plaintiff is now confined. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II. SCREENING

### A. Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Courts liberally construe pro se pleadings filed in civil rights cases

and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

### B. Allegations of the Complaint

First, Plaintiff alleges that after he "refused to listen to [Defendant] Domberski['s] reason for keeping [him] locked down for [two hours]," during which time he was supposed to be able to use the phone (although the jail has been inconsistent about the time he can use the phone), this Defendant refused to give him a grievance or § 1983 complaint form and kept him locked down for approximately six more hours [Doc. 1 p. 3–4].

Plaintiff next claims that after he stood up to an inmate who was using racial slurs against him and Defendants Gilliam and Neely observed the two inmates arguing, Plaintiff told them that he was responding to the inmate's racial slurs but "[he] was locked down for standing up for [him]self" [*Id.* at 5]. Further, when he asked Defendant Gilliam for a § 1983 complaint form, this Defendant said that he did not have one, and then denied Plaintiff's request to see the Lieutenant and ignored Plaintiff's question about which crew was on that shift [*Id.* at 5–6]. Plaintiff states that he "just wanted to be treated with some respect and dignity" and "[has] rights as a ward of the State of Tennessee" [*Id.* at 6].

Plaintiff seeks injunctive relief, punitive damages, and reprimand of Defendants [*Id.* at 7].

### C. Analysis

#### 1. Lockdowns and Phone

First, to the extent Plaintiff alleges that his alleged lockdowns and lack of consistent access to a telephone violated his constitutional rights, he has failed to state a claim upon which relief

may be granted under § 1983. "[T]the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Accordingly, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Thus, only "extreme deprivations" that deny a prisoner "the minimal civilized measure of life's necessities" violate the prisoner's Eighth Amendment rights. *Id.* at 8–9 (1992) (citations and quotations omitted).

Prison authorities may not, however, "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). Accordingly, in examining claims alleging that the conditions of the plaintiff's confinement may violate the Eighth Amendment, a court must determine whether the risk of which the plaintiff complains is "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id*. at 36; *see also Rhodes*, 452 U.S. at 347.

Also, prisoners have "no right to unlimited telephone use." *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994). Rather, "a prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution. The exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions." *Id.*

4

Plaintiff's allegations that he has experienced lockdowns during which he was unable to use the telephone and has not been able to use the telephone at a consistent time each day do not allow the Court to plausibly infer that any Defendant has subjected him to an extreme deprivation of a life necessity or unreasonably restricted his right to use the telephone. *Id.*; *Bishawi v. Northeast Ohio Corr. Ctr.*, 628 F. App'x, 339, 345–46 (6th Cir. 2014) (providing that allegations of "frequent lockdowns . . . are insufficient to support an Eighth Amendment claim"). Rather, these incidents appear to be temporary inconveniences that are incidental to Plaintiff's incarceration. *Dellis v. Corrs. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir. 2001) (providing that temporary inconveniences "did not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency").

Thus, these allegations fail to state a claim upon which relief may be granted under § 1983.

### 2. Retaliation

Also, to the extent that Plaintiff alleges that Defendants subjected him to lockdowns in retaliation for his actions, he likewise fails to state a claim upon which relief may be granted under § 1983. A claim for retaliation in violation of § 1983 requires a plaintiff to demonstrate that (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

However, a prisoner's verbal altercation with an officer and/or challenge to an officer's authority is not protected conduct. *Higgs v. Easterling*, No. 3:11-CV-P499-S, 2012 WL 692610, at *14 (W.D. Ky. Mar. 2, 2012); *Caffey v. Maue*, 679 F. App'x 487 (7th Cir. Feb. 15, 2017)

(holding that an inmate's act of calling guards unprofessional was a challenge to the guards' authority that was not protected by the First Amendment); *Felton v. Huibregtse*, 525 F. App'x 484, 487 (7th Cir. 2013) (holding that the use of disrespectful language was not protected conduct) (citing cases). Moreover, a prisoner's subjective belief that he has been retaliated against is insufficient to state a retaliation claim, *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997), and wholly conclusory allegations of retaliation are insufficient to state a plausible claim for violation of § 1983. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987).

As set forth above, Plaintiff specifies in his complaint that Defendant Domberski kept him on lockdown for approximately six hours after he "refused to listen" to this Defendant's explanation for Plaintiff's morning lockdown. As such, it is apparent that Plaintiff's challenge to this Defendant's authority, which is not protected conduct, motivated this lockdown, and this allegation therefore fails to state a claim for retaliation upon which relief may be granted under § 1983.

Also, Plaintiff's allegation that Defendants Gilliam and Neely locked him down because he stood up for himself is conclusory and unsupported by any facts from which the Court could plausibly infer that any protected conduct motivated these Defendants to lock him down or that this lockdown was of a nature that it would deter a reasonable prisoner from continuing to engage in that conduct as required to state a claim for retaliation. Thus, this allegation likewise fails to state a claim for retaliation upon which relief may be granted under § 1983.

### 3. Grievance and Complaint Forms

Further, Plaintiff's allegation that Defendant Domberski did not get him a grievance form when he requested one also fails to state a claim upon which relief may be granted under § 1983, as Plaintiff has "no inherent constitutional right to an effective prison grievance procedure."

*Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003). Likewise, Plaintiff's allegation that Defendants denied or ignored his requests for a § 1983 complaint form, for a Lieutenant, and for the name of the crew on shift do not allow the Court to plausibly infer that any Defendant violated Plaintiff's constitutional rights. *Id.*; *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (holding that a plaintiff must plead and prove that his meritorious claims have been prejudiced by the alleged denial of access to the courts to state a claim upon which relief may be granted under § 1983); *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (providing that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits).

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 4] will be **GRANTED**;

2. Plaintiff will be **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk will be **DIRECTED** to provide a copy of this memorandum opinion and the accompanying order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5. Even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983;

6. Accordingly, this action will be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A); and

7. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**E N T E R**:

                s/Clifton L. Corker
                United States District Judge